# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FANTA TOURE, ET AL.** | **CIVIL ACTION** |
| **v.** | **NO. 18-1889** |
| **UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, ET AL.** | |

## <u>MEMORANDUM RE: MOTIONS FOR SUMMARY JUDGMENT</u>

**Baylson, J.**                                                **June 10, 2019**

Plaintiffs Samba Diakite, a United States citizen and his non-citizen Malian wife, Fanta Toure, appeal a decision by the Board of Immigration Appeals ("BIA") denying an Alien Relative Petition (I-130) the citizen filed on behalf of his wife. Plaintiffs contend that the final agency action was arbitrary and capricious.

Before the Court are the parties' cross motions for summary judgment. (Def. Mot., ECF 7; Pl. Mot. ECF 9.) Both parties have responded to the other parties' motion. (Def. Resp., ECF 11; Pl. Resp.; ECF 10.) For the reasons that follow, Defendant's motion is granted.

## I. Background

The relevant factual materials are contained within the administrative record in this case, and begin with the September 11, 2000 Non-Immigrant Visa Application that Toure submitted to the United States Embassy in Bamako, Mali. (Def. Statement of Undisputed Material Facts, ECF 8 ("DSOF") ¶ 1.) On that form, Toure noted that her last name was "Toure espouse Kone," which translates to "Toure, spouse of Kone" in English, and wrote that the name of her spouse was Cheick Oumar Tidaiani Kone. (DSOF at ¶ 2.) Toure also wrote that her year of birth was 1958. (DSOF ¶ 3.)

The record also contains two Non-Immigrant Visa Applicant Detail forms for Toure and

for Kone, on which the two represented that they were married. (Pl. Statement of Undisputed Facts, ECF 13 ("PSOF") ¶ 2.) The United States Department of State Consular Official issued Toure a B-2 nonimmigrant visa to enter the United States on November 7, 2000. (PSOF ¶ 3; DSOF ¶ 4.)

Toure then married Diakite in East Lansdowne, Pennsylvania on February 10, 2007. (DSOF ¶ 7.) Beginning in 2007, Diakite filed four I-130, Petition for Alien Relative forms to the U.S. Citizenship and Immigration Services ("USCIS"). (DSOF ¶¶ 8, 26, 35, 48.)

On the first I-130 petition, submitted in November 2007, when asked the name of Toure's prior husband, Diakite wrote "none." (ECF 5-8 at 45.) Both Toure's and Diakite's biographic information form submitted with that petition stated that Toure was not previously married. (Id. at 9, 49.) Toure's birth certificate submitted with this application showed that she was born in 1972. (Id. at 35.) On a passport submitted with this application, Toure's name was listed as "Toure Espouse Kone." (Id. at 15.) Also in November 2007, Toure filed an Application to Register Permanent Residence or Adjust Status (Form I-485), declaring that she had never "by fraud or willful misrepresentation of a material fact,… sought to procure, or procured a visa." (Id. at 4.) During an interview about that application, however, Toure admitted that she sought admission to the United States through fraud or misrepresentation. (DSOF ¶ 16.) In September 2008, Toure filed an Application of Waiver of Grounds of Inadmissibility (Form I-601) seeking a waiver of inadmissibility resulting from "[m]isstatement of age and marital status at the time of non-immigrant visa application." (ECF 5-6 at 78.)

When the USCIS issued Diakite a Notice of Intent to Deny ("NOID") the I-130 petition, Plaintiffs' attorney wrote a letter asserting that Toure was in fact married to a different individual named Moussa Kone, but that marriage was properly terminated when Kone died. (ECF 5-5 at

2

70-71.) Attached to that letter were, among other things, a sealed marriage certificate (Id. at 75) and documentation of Moussa Kone's death. (ECF 5-8 at 41.) USCIS denied the I-130 petition, I-485 application for adjustment of status, and I-601 waiver of admissibility on June 2009. (ECF 5-5 at 62-65, 57, 59.)

Diakite filed another I-130 petition in July 2009, this time stating that Toure had been previously married to Moussa Kone but that the marriage terminated. (ECF 5-5 at 2-3.) USCIS approved this petition without conducting an interview in September 2009. (DSOF at ¶ 28.) Toure filed a second I-485 application in October 2009, again stating that she had not obtained a visa through fraud. (ECF 5-4 at 23.) Again, however, she changed the answer at her interview. (Id.; DSOF at ¶ 31.) In January 2010, Toure filed another I-601 waiver application again seeking waiver because she misstated her age and marital status on her visa application. (ECF 5-3 at 1-6.) After sending a Notice of Intent to Revoke ("NOIR") and receiving a letter from Plaintiffs counsel, USCIS revoked the approval of the second I-130 petition and denied the section I-485 application and I-501 waiver application in April 2010. (DSOF at ¶¶ 33-36.) Toure was placed in removal proceedings when USCIS issued a Notice to Appear in July 2010. (ECF 5-2 at 92-95.)

Diakite filed a third I-130 petition for Toure in November 2010, representing that Toure had not been previously married. (ECF 5-2 at 68-69.) Toure filed another I-485 application in July 2011. (DSOF ¶ 40.) USCIS issued a NOID in August 2011, writing that "USCIS carefully considered evidence on record in this case and finds a consistent pattern of misrepresentation regarding the beneficiary's marital status" and that "the evidence you have submitted to date is unpersuasive in establishing the legal termination of the beneficiary's prior marriages." (ECF 5-2 at 38-41.) USCIS denied the third I-130 petition in December 2011, noting that Diakite did not file a response to the NOID. (ECF 5-2 at 30-31.)

In January 2012, Plaintiffs filed a Motion to Reopen or Reconsider, attaching to it Malain documents intended to show that Toure was never married in Mali, including a Certificate of Celibacy. (ECF 5-2 at 26-29, 14-17.) USCIS denied this Motion in April 2014. (ECF 5-2 at 1-2.) Toure's I-485 was administratively closed on that same day on the basis of lack of jurisdiction because Toure was in removal proceedings. (ECF 5-2 at 5-6.)

Diakite filed the fourth and final I-130 petition in September 2014, stating on it that Toure was never previously married. (ECF 5-1 at 88-89.) USCIS issued a NOID on March 7, 2016, writing that "[b]ased on the above facts and information, USCIS finds that you have failed to establish that the beneficiary was free to marry you, a requirement for a petition for a spouse." (ECF 5-1 at 2-6.) Plaintiffs responded by sending USCIS the Marriage and Guardianship Code of Mali, which they contended requires signatures at the registrar of vital statistics, and arguing that "[i]f Fanta Toure was ever married these documents would exist, but since there is no record of this, there was no marriage in Mali." (ECF 5 at 92, 100-116.) Plaintiffs also attached an Administrative Certificate of Authenticity from the Governor's Office in the District of Bamako, Mali stating that Toure was never married. (ECF 5 at 118-19.) USCIS denied this I-130 petition on February 10, 2017. (ECF 5 at 71-77.)

On March 10, 2017. Plaintiffs appealed USCIS's decision to the Board of Immigration Appeals. (ECF 5 at 67.)

## II.    Board of Immigration Appeals Decision

The Board of Immigration Appeals issued its decision on April 5, 2018. (ECF 1 at 27-29.) Linda S. Wendtland wrote for the Board and reviewed all of Diakite's I-130 petitions. The Board dismissed the appeal, finding:

> Upon de novo review, we will affirm the Director's decision to
> deny the instant visa petition, as the evidence of record suggests a

determination that the petitioner has not shown eligibility for the benefit sought. We agree with the Director that the evidence submitted by the petitioner is not sufficiently persuasive to establish that the beneficiary was legally free to marry the petitioner on February 10, 2007, such that their marriage is legally valid.

(ECF 1 at 28.)

The Board went on to explain that the issue with the petition was the "conflicting evidence, both in the form of the claims of the beneficiary herself and the objective evidence of record, as to whether (and to whom) the beneficiary was previously married, and thus whether she was free to marry the petitioner." (ECF 1 at 29.) The Board then reviewed the various discrepancies on the forms submitted with her many I-130 petitions. The Board noted that "these statements have been inconsistent with each other, claiming at times that the beneficiary was not previously married, while at times claiming that she was previously married to 'Mr. K,' a different individual from the person identified on her visa application." (Id.)

Finally, the Board reviewed USCIS's decision to give no weight to the documents from Mali, including the Certificate of Celibacy and the Certificate of Authenticity, concluding:

[A]s observed by USCIS, these documents contain inaccuracies and also are contradicted by other objective evidence that was previously submitted, including a certified and sealed marriage certificate issued by the same district showing that the beneficiary married "Mr. K" on February 4, 1993. The discrepancy regarding the name of the beneficiary's spouse, and the status of her relationship to the individual initially identified as her spouse in her visa application, also remains unclarified.

(Id.)

### III.    Standard of Review

Although "'summary judgment is the proper mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record,' the district court is acting as

an appellate tribunal, and 'the usual summary judgment standard does not apply.'" Zizi v. Bausman, 306 F. Supp. 3d 697, 702 (E.D. Pa. 2018) (Pratter, J.) (appeal pending) (quoting Dorley v. Cardinale, 119 F. Supp. 3d 345, 351 (E.D. Pa. 2015)) aff'd sub nom. Zizi v. Field Office Dir., 753 F. App'x 116 (3d Cir. 2019).

When review an agency decision, a court may set that decision aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 41 (1983) (quoting 5 U.S.C. § 706(2)(A)). In considering whether an agency decision was arbitrary and capricious, a reviewing court must determine whether the agency has "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Id. at 43 (quoting Burlington Truck Lines v. United States, 371 U.S. 156, 168 (1962)); see also NVE, Inc. v. Department of Health and Human Services, 436 F.3d 182, 190 (3d. Cir. 2006) (A district court "must ensure only that the agency has applied the procedures for rulemaking required by law and reached a rational conclusion.") If the agency has put forth a rational explanation, then there has been no abuse of discretion. Smith v. Holder, 487 Fed. Appx. 731, 733 (3d Cir. 2012).

The scope of review "should be the administrative record already in existence, not some new record made initially in the reviewing court." Camp v. Pitts, 411 U.S. 138, 142 (1973). A court must not "'substitute its judgment for that of the agency' in an APA challenge." NVE, Inc. v. Dep't of Health & Human Servs., 436 F.3d 182, 190 (3d Cir. 2006) (quoting Motor Vehicle Mfrs., 463 U.S. at 43).

## IV.    Eligibility for I-130 petition

A Petition for Alien Relative form (form I-130) is filed by a United States citizen or

lawful permanent resident on behalf of their spouse. 8 C.F.R. § 204.1. The I-130 does not itself

alter a beneficiary's immigration status, but merely establishes that there is a legitimate familial

relative relationship upon which immigration benefits may be sought. The process of filing an I-

130 petition is on a separate "track" from removal proceedings. See e.g. Hashmi v. Attorney

Gen. of U.S., 531 F.3d 256, 258 (3d Cir. 2008) (vacating the BIA's decision to deny a

continuance and discussing the dearth of necessary communication between the Plaintiff's I-130

petition process and removal proceedings).

Among the eligibility standards for such a petition is a requirement that the petitioner

submit "proof of the legal termination of all previous marriages of both the petitioner and the

beneficiary." § 204.2(a)(2). The petitioner must "establish by clear and convincing evidence that

the prior marriage was not entered into for the purpose of evading the immigration laws. Failure

to meet the 'clear and convincing evidence' standard will result in the denial of the petition." §

204.2(a)(1)(i)(C).

## V.    Discussion

At the crux of this dispute is whether the BIA's decision that Diakite had not met his

burden of showing that Toure was eligible for designation as an I-130 beneficiary was arbitrary

and capricious, an abuse of discretion, or otherwise not in accordance with the law.

Plaintiffs contend that Diakite has satisfied this burden of demonstrating eligibility for the

I-130 petition because he produced a Certificate of Authenticity and a Certificate of Celibacy

from the Governor's Office of the District of Bamako, Republic of Mali which show that Toure

was never married before. (Pl. Mot. Memo., ECF 9-2 at 5.) Plaintiffs argue that the BIA

inappropriately decided to afford these documents no weight in light of Toure's own admittedly

false prior statements to the United States Consulate in Bamako that she was married to Cheick

Oumar Tidani Kone. (Pl. Mot. Memo. at 6-7.) Plaintiffs also contend that it was arbitrary and

capricious for USCIS to "accept an undocumented representation of marital status on a visa

application as proof of the existence of a marriage." (Pl. Mot. Memo. at 8.)

The Government argues that Plaintiffs have failed to meet their burden of eligibility for

an I-130 visa because it "is not at all clear to whom she was married and when that marriage

occurred." (Def. Mot. Memo., ECF 7 at 7.) The Government presents citations to other cases

where the BIA remanded a decision of USCIS, finding that although a beneficiary

misrepresented marital status on a nonimmigrant visa application, documentation was provided

that the BIA found was sufficient to establish the fact that there was no prior marriage. See In re

Othman Khamouch, 2009 WL 455616, at *1 (BIA Feb. 10, 2009); see also

In Re: Sergiy v. Korchagin, Beneficiary of A Visa Petition Filed by Alexandra Natalie

Korchagin, Petitioner, WL 2418707, at *3 (DCBABR Sept. 30, 2004). The government points

out correctly that "in those reversals the beneficiary presented a consistent claim that he or she

had never been previously married—that is not true of Toure." (Def. Mot. Memo. at 8.)

The Third Circuit addressed a similar factual situation in Smith v. Holder, 487 F. App'x

731 (3d Cir. 2012). There, a United States citizen filed an I-130 petition for her husband, a

Ghanaian citizen who had entered the United States on a non-immigrant visa. In the application

for that visa, he stated that he was married to a woman in Ghana and had two children with her.

Id. at 733. When USCIS sent a NOID on the basis that he was previously married and had not

presented evidence of an official divorce, the couple presented an affidavit from the husband's

uncle stating that he was never married. Id. USCIS found this unpersuasive because the

petitioner had not "provided evidence of divorce for his previously self-acknowledged marriage"

and concluded the marriage to the U.S. citizen was invalid. The BIA affirmed the decision. The

District Court granted summary judgment to the defendants, concluding that USCIS reasonably relied on the facts from the husband's visa application, and that the conflicting evidence presented supporting "a finding of a sham marriage." Id.

The Third Circuit held that the District Court should not have reached the issue of the fraudulent marriage given the fact that its review under the APA is limited to the administrative record. Id. at 734. The Court did, however, hold that the District Court properly granted summary judgment because "[t]here was a reasonable basis for the initial USCIS decision, and under APA review that is all that is necessary to uphold such a determination." Id. at 735.

The Court finds the logic of Smith persuasive here. The BIA reasonably gave no weight to the documents from Bamako, Mali when it concluded that they presented contradictory messages—a marriage certificate saying that Toure was married (ECF 5-8 at 39) and a certificate of celibacy stating that she was not (ECF 5-2 at 15). In light of the contradictory nature of these documents and the Plaintiffs' contradictory testimony and statements on their various petitions, the BIA reasonably concluded that Toure did not establish that she was legally free to marry Diakite at the time of their marriage, and therefore to find her ineligible for the I-130 petition. Given the significant deference this Court owes the BIA's decision, this decision was not arbitrary and capricious.

Finally, Plaintiffs contend that Toure's admission that she lied on her visa application is a statement against her own interest that should render her admissible in her removal proceedings. (Pl. Mot. Memo. at 9-10.) She argues that "[d]enying Ms. Toure's petition because she lied and 'made factually different and contradictory assertions across multiple petitions' means that she will never be able to meet her burden of proof…. This is a denial of due process." (Pl. Resp. at 5.) The Government responds that a "United States citizen spouse has no fundamental right to

9

have their alien spouse remain in the United States." (Def. Mot. Memo. at 9.)

Neither Plaintiff has a due process right implicated in this dispute. Plaintiffs have provided us with no citation to a due process right that could be implicated here.[1] Moreover, to the extent that Plaintiffs' due process arguments speak to her removal proceedings, this Court declines to comment. The issue before the Court is the BIA's rejection of Diakite's I-130 petition and therefore we do not opine about Toure's waiver of inadmissibility.

## VI. Conclusion

The BIA did not act arbitrarily, capriciously, or otherwise not in accordance of the law, when it found, based upon the administrative record before it, that Diakite had not met his burden of showing that Toure was legally free to marry him. Summary judgment is granted in favor of Defendants.

An appropriate order follows.

O:\CIVIL 18\18-1889 Toure v. INS\18cv1889 MSJ Memo.docx

---

[1] At oral argument, the Court questioned the parties about whether the factual circumstances of this case warranted consideration of the doctrine of equitable estoppel against the government for the delay in processing Diakite's I-130 petition and visa. Under the circumstances of this case, however, the Court concludes that the government has treated the plaintiffs in an appropriate manner in accordance with agency regulations.